# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Case No. 1:12-cr-00320 |
| ) | |
| v. ) | Honorable Liam O'Grady |
| ) | |
| JOSE FREDY DELCID, ) | Sentencing: November 30, 2012 |
| also known as "Oscar Salgado," "Oscar," ) | |
| "Franklin," "Chami," and "Matador," ) | |
| ) | |
| Defendant. ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by and through its attorneys, Neil H. MacBride, United States Attorney for the Eastern District of Virginia, Assistant United States Attorney Sean P. Tonolli, and Special Assistant United States Attorneys Scott B. Nussbum and Emily M. Loeb, hereby files this position with respect to sentencing for the defendant, Jose Fredy Delcid. The United States respectfully submits that a term of imprisonment of 262 months would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a). The government does not seek a fine in this matter. However, a $100 mandatory special assessment is required.

## BACKGROUND

On July 17, 2012, pursuant to a plea agreement, the defendant pleaded guilty to a single count Criminal Information charging him with conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. In doing so, the defendant admitted he was a member of the conspiracy since in and around 2005. The parties

further stipulated that the defendant is responsible for at least 150 kilograms of cocaine being trafficked by the conspiracy.

In accordance with Section 6A1.2 of the Guidelines and Policy Statements and this Court's policy regarding Guideline sentencing, the United States hereby represents that it has reviewed the Probation Office's presentence report ("PSR") prepared in this matter. The government does not dispute any of the sentencing factors set forth in the presentence report or the Probation Office's calculation of the recommended Guidelines range. However, the government is not seeking the two-level enhancement under Section 2D1.1(14)(C) for the defendant's direct involvement in the importation of cocaine. Accordingly, the government submits that the Offense Level should be 39, which carries an advisory range of 262 to 327 months.

Given the Court's in-depth familiarity with the workings of the conspiracy, as well as the detailed account contained in the PSR, the government will not reiterate all the underlying facts. However, certain aspects of the defendant's conduct do merit further discussion.

First, of the thirty-eight co-defendants charged to date, the defendant is one of just three who admitted to being involved in the conspiracy since 2005 and being responsible for 150 kilograms or more of cocaine. The other two are Lindor Martinez-Guevara and Samuel Benitez-Pineda. Like them the defendant was involved at every level of the conspiracy, from coordinating directly with sources of supply in Honduras, PSR ¶ 91-96,[1] to picking up shipments from couriers once they landed in the United States, *id.* ¶ 121-22, to distributing the drug himself and through a network of sub-distributors, *id.* ¶ 133-49, and finally to wiring money back to

---

[1] In his discussion with the probation officer, the defendant omitted the fact that he is in a long-term relationship with a woman who resides in Honduras. *See* PSR ¶¶ 183-91. This is not surprising since the woman, who the defendant often referred to as his wife in intercepted communications, was one of his primary sources of supply for cocaine.

2

Honduras to pay for the cocaine, *id*. ¶ 123-25. The defendant began these efforts within *months* of immigrating illegally into the United States in June 2005, as wire transfer records establish that he sent $500 to Lindor Martinez-Guevara in Honduras on September 12, 2005. *Id*. ¶ 84.

Second, the PSR is correct to characterize the defendant as an "organizer and leader in an extensive criminal organization." *Id*. ¶167. He had several people through whom he carried out acts in furtherance of the conspiracy. Joaquin Avila-Rodriguez picked up cocaine from a courier on the defendant's behalf. *Id*. ¶¶ 141-42. The defendant supplied Elder Antonio Mejia Ramos and Jose Moises Lemus Beltran with wholesale quantities of cocaine that they then redistributed to others. *Id*. ¶¶ 144-49. He did the same with Carlos Lenin Mejia Amaya (referred to in the PSR as UCC #19), who the defendant also used to wire money to Honduras. *Id*. ¶ 143. *See also* Statement of Facts ¶ 5, *United States v. Carlos Lenin Mejia Amaya*, 1:12-cr-00255 (docketed November 2, 2012). Gloria Castro, a married mother of two, was another person the defendant employed to wire money. PSR ¶¶ 123-25, 137-40.

Third, while the government is not seeking a two-level firearm enhancement, that does not change the fact that there is every reason to believe the defendant was involved with firearms during the course of the conspiracy. On April 6, 2012, for instance, the defendant told Samuel Benitez-Pineda he went to a cocaine deal with an associate who was armed with a 9mm handgun because the defendant was worried the customer may try to harm him. Specifically, the defendant said, "Those sons of bitches fucked me over. They were going to give me fourteen but when the time came they only had nine." Benitez-Pineda replied, "They would give you nine but didn't say if they would owe the rest to you?" The defendant answered, "I told them from the beginning, cash on delivery. . . . I was [thinking they could] harm me because I had a son of a

bitch with me with a fucking nine. . . . The son of a bitch told them, 'Nobody will be pulling a fast one here because I'll put out whoever pulls a fast one.'"

Then, on April 23, 2012, the defendant exchanged text messages with a newly developed cocaine source of supply in Honduras who said he would need a firearm if he was going to work with the defendant. PSR ¶ 136. The defendant initially sent the source a text message that said, "Yes [name redacted], I'm going to help you, work for me." The source replied, "Ok, I'm willing to do anything for you because I need some money that I owe and I want to purchase a pistol because you know that I travel long distance and it's necessary." The defendant replied, "I'll give you mine if you need it." The source said, "Well, if you have one I would only get a permit to carry it." The defendant then said, "Yes, just tell me by when you want it or I could buy you one." The source ended with, "Well, you decide that, when you can I'll pay you with work and I'll try not to fail because I like to be punctual."

Fourth, while the defendant did maintain legitimate employment at a restaurant within the Eden Center, he used it as a base of operations to distribute cocaine. PSR ¶ 134. On March 8, 2012, while ordering a shipment of cocaine, he explained to one of his Honduras suppliers, "This will go fast dude. I have a lot of people right now. Chinese and Hispanics." Four days later, he told Samuel Benitez-Pineda, "Just the day before yesterday, just from the Chinese shopping center, I had 3,000 dude." Then on March 15, 2012, he again told Benitez-Pineda, "I go to that fucking shopping and I bring up to 1,100, 2,000, 3,000. I had 5,000 the other day. . . . Only the Chinese."

Finally, the defendant did not have a drug addiction, PSR ¶ 194-95; he trafficked in cocaine solely for the money. As he explained to Concepcion Benitez-Pineda when describing the money he made over the course of his time in the conspiracy, "I've done very well." *Id*. ¶ 84.

4

This was not mere puffery. On March 16, 2012, for instance, he explained to Gloria Castro that he made $15,000 in the span of a few days. *See id.* ¶ 138. Nine days later he told her he had made another $7,000. *Id.* ¶ 139.

## RECOMMENDATION

Even though the Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 125 S. Ct. 738, 767 (2005). "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553 states that the Court should consider the nature and circumstances of the offense and characteristics of the defendant. The Court must also consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). In addition, the sentence should protect the public from further crimes of the defendant and provide the defendant with needed correctional treatment. *Id.* § 3553(a)(2)(C) & (D). Finally, the sentence should address "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6).

The crime for which the defendant stands convicted unquestionably is serious, as the trafficking of cocaine imposes enormous costs on individuals, families, and the community, including the costs associated with law enforcement, corrections, medical treatment, and

substance abuse treatment. Indeed, Congress has determined that trafficking in five kilograms of cocaine generally should subject a defendant to at least a period of incarceration of 120 months. Here the defendant admitted he is responsible, directly and through the reasonably foreseeable actions of his co-conspirators, for the trafficking of at least *thirty* times that amount of cocaine.

The government submits that the defendant should receive a sentence of 262 months, which will reasonably and appropriately account for all the factors set forth in 18 U.S.C. § 3553(a). Such a sentence would provide significant deterrence for this defendant, while also communicating the seriousness and dangerousness of this offense to the public and to others engaged in similar criminal conduct. It would provide for protection of the public and serve to prevent disparate sentences between this defendant and others who trafficked in amounts of cocaine greater than five kilograms but less than 150 kilograms, and who did not play such a prominent role in the conspiracy. For instance, the Court imposed a sentence of 210 months on Mario Benitez-Pineda, who was involved in the conspiracy for a lesser amount of time, was responsible for a lower weight, and was assessed only a three-level leadership enhancement.

## CONCLUSION

For all of the above reasons, the United States respectfully submits that a term of imprisonment of 262 months would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

                                              Respectfully submitted,

                                              NEIL H. MACBRIDE
                                              United States Attorney

                                              __/s/_____
                                              SEAN P. TONOLLI
                                              Assistant United States Attorney
                                              SCOTT B. NUSSBUM
                                              EMILY M. LOEB
                                              Special Assistant United States Attorneys
                                              Attorneys for United States
                                              U.S. Attorney's Office
                                              2100 Jamieson Avenue
                                              Alexandria, Virginia 22314
                                              Phone: 703-299-3700
                                              Fax: 703-299-3980
                                              Email: sean.tonolli@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of November, 2012, I provided an electronic copy of the foregoing pleading to the United States Probation Officer and filed electronically the same using the CM/ECF system, which will send a notification of such filing (NEF) to the following defense counsel of record:

Elita C. Amato
1600 Wilson Boulevard
Suite 205
Arlington, VA 22209
amato.law@comcast.net

        /s/_____
Sean P. Tonolli
Assistant United States Attorney
Attorney for United States
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-837-8242
Email: sean.tonolli@usdoj.gov